UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | 5:26-cv-01063-SSS-AYP | Date | March 16, 2026 |
|---|---|---|---|
| Title | *Mario Oropeza Barrera v. Kristi Noem et al.* | | |

| Present: The Honorable | SUNSHINE S. SYKES, UNITED STATES DISTRICT JUDGE |
|---|---|

| Irene Vazquez | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:   (IN CHAMBERS) ORDER GRANTING PETITIONER'S EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER [DKT. NO. 2]**

Before the Court is Petitioner Mario Oropeza Barrera's Ex Parte Application for a Temporary Restraining Order ("TRO") filed in connection with his Petition for Writ of Habeas Corpus. [Dkt. No. 2-1, "Application for TRO" or "TRO App."].

I.   **BACKGROUND**

Petitioner Mario Oropeza Barrera is a citizen and national of Mexico who is currently detained at Adelanto Detention Center in Adelanto, California. He has been in Respondents' custody since January 29, 2026. [TRO App. at 6–7].

Petitioner entered the United States back in the 1970s and was granted status as a lawful permanent resident in June of 1980. [TRO App. at 6]. At some later time, Petitioner was convicted of criminal offenses that rendered him removable from the United States. [*Id.*]. Petitioner was removed to Mexico, where he unfortunately was "kidnapp[ed] and held against his will at a remote rural ranch for months, where he was beaten, starved, and tortured." [*Id.*].

Petitioner fled these conditions and re-entered the United States. [TRO App. at 6]. In 2014, an Immigration Judge ("IJ") issued a written opinion finding that Petitioner has a credible fear of returning to Mexico. [*Id.* at 7]. On December 14, 20214, Petitioner was "granted deferral of removal pursuant to the Convention of Torture ('CAT') and placed on an Order of Supervision ('OSUP')." [*Id.*].

For the past twelve years, Petitioner "has lived non-detained and dutifully met all obligations imposed upon him." [TRO App. at 7]. He has voluntarily complied with his OSUP terms and even "held a work authorization document" to work lawfully in the United States. [*Id.*].

On January 29, 2026, Immigration and Customs Enforcement ("ICE") contacted Petitioner and requested that he appear before Enforcement and Removal Operations ("ERO"). [TRO App. at 7]. Under the impression that ICE sought to summon him for concerns related to his work authorization renewal, Petitioner appeared before ICE ERO. [*Id.*]. That day, Petitioner was apprehended and served with a notice that his release had been revoked. [*Id.*]. Although the notice indicates Petitioner would receive an informal interview about his custody re-determination, Petitioner's TRO Application suggests no such hearing has been conducted. [*Id.*]. Thus, Petitioner maintains he has been "detained without explanation or warning." [*Id.*].

Respondents dispute the nature of these circumstances. According to the Opposition, Petitioner "was served with a Notice of Revocation of Release *and* given an informal interview, in which he did not provide any response to the reasons for his revocation." [Dkt. No. 7 at 2, "Opposition" or "Opp."; *see also* Dkt. No. 7-3 at 4].

Petitioner remains in immigration detention to this day, and has not been provided any opportunity for reconsideration of his custody re-determination since January 29, 2026, despite having been issued a credible fear finding by an IJ.

In filing this TRO Application, Petitioner seeks relief in the form of his immediate release on OSUP and return of his valid work authorization document and any other identity documents. [*See generally* TRO App.; *see also* Dkt. No. 2-2 at 2]. In the alternative, Petitioner requested his immediate release from immigration detention with a corresponding order enjoining Respondents from re-detaining him unless they provide a pre-deprivation bond hearing. [TRO App. at 2].

The TRO Application is fully briefed and ripe for review. [Dkt. No. 2-1, "TRO App."; Dkt. No. 7, "Opposition" or "Opp."; Dkt. No. 9, "Reply"]. For the

reasons discussed below, the Court **GRANTS** the TRO Application.

## II.     LEGAL STANDARD

To justify ex parte relief, the moving party must make two showings: (1) "the evidence must show that the moving party's cause will be irreparably prejudiced if the underlying motion is heard according to regular noticed motion procedures"; and (2) "it must be established that the moving party is without fault in creating the crisis that requires ex parte relief, or that the crisis occurred as a result of excusable neglect." *Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488, 492 (C.D. Cal. 1995).

For the Court to grant an application for a TRO, the moving party must show: (1) that he is "likely to succeed on the merits" of his underlying claim, (2) that he is "likely to suffer irreparable harm in the absence of preliminary relief," (3) that "the balance of equities tips in his favor," and (4) that the requested injunction "is in the public interest." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008).  The standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction.  *See Lockheed Missile & Space Co., Inc. v. Hughes Aircraft Co.*, 887 F. Supp. 1320, 1323 (N.D. Cal. 1995).

The Ninth Circuit uses a sliding scale approach to preliminary injunctions, such that "a stronger showing of one element may offset a weaker showing of another."  *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011); *see also Pimentel v. Dreyfus*, 670 F.3d 1096, 1105 (9th Cir. 2012).  Under the sliding scale approach, a petitioner is entitled to a TRO if he has raised "serious questions going to the merits . . . and the balance of hardships tips sharply in [his] favor."  *All. for the Wild Rockies*, 632 F.3d at 1131 (quoting *Clear Channel Outdoor, Inc. v. City of Los Angeles*, 340 F.3d 810, 813 (9th Cir. 2003)).

## III.    DISCUSSION

### A.     Likelihood of Success on the Merits

Petitioner argues that his detention violates his substantive and procedural due process rights because he had a protected liberty interest in remaining free upon his release on parole.  [TRO App. at 10–22].  As Petitioner has observed, 8 C.F.R. § 241.13(i)(2) allows for revocation of a noncitizen's release only if "there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future." [*Id.* at 11].  Moreover, ICE is required to provide Petitioner with notice of reasons for revocation of his release. [*Id.* at 15 (citing to 8 C.F.R. §§ 241.13(h)(4)(i)(2), (3)].

Respondents insist they provided adequate notice in compliance with § 241.14(i)(3) because Petitioner was "*immediately* issued a Notice of Revocation of Release upon his detention." [Opp. at 6 (emphasis in original)]. The Opposition suggests that because Petitioner was "notified . . . of the reasons for the detention" and was "also given the opportunity to respond to the reasons for the revocation, . . . the foregoing process is more than sufficient." [*Id.*]. In his Reply, Petitioner clarifies that "the notice itself was issued *after* Petitioner had already been placed into custody." [Reply at 10].

The Court finds that Petitioner is likely to succeed on the merits of his due process claims, notwithstanding any post-detention bond hearing.

Due process claims proceed in two steps, first, determining if the Due Process Clause protects a Petitioner's liberty interest, and second, determining what procedures a petitioner is entitled to protect that right.

Petitioner's right to remain on release with his OSUP is a liberty interest protected by the Due Process Clause. Courts in this circuit have routinely held that noncitizens that have been previously released have a "protected liberty interest in remaining out of custody." *Pinchi v. Noem*, No. 5:25-CV-05632-PCP, 2025 WL 2084921, at *3 (N.D. Cal. July 24, 2025) (collecting cases); see also *Trump v. J. G. G.*, 145 S. Ct. 1003, 1006 (2025) (noncitizens protected by Due Process Clause). In other words, though the government may have discretion over their release, "the government's decision to release an individual from custody creates an implicit promise, upon which that individual may rely, that their liberty will be revoked only if they fail to live up to the conditions of release." *Pinchi*, 2025 WL 2084921, at *3 (citation modified). Much like the liberty interest that exists for those released on bond, a similar liberty interest exists for those that are paroled and released into the community upon entry to the country. *Espinoza v. Kaiser*, 2025 WL 2675785, *9 (E.D. Cal. 2025) ([w]hen an immigrant is placed into parole status after having been detained, a protected liberty interest may arise," and the "Due Process Clause may protect this liberty interest even where a statute allows the immigrant's arrest and detention and does not provide for procedural protections.").

The Court now turns to the question of what procedures are appropriate to protect Petitioner's liberty interest. Under *Mathews v. Eldridge*, the Court considers three factors.

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of

additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 S. 319, 335 (1976).

### 1. Petitioner's Private Interest

The first *Mathews* factor considers "the private interest that will be affected by the official action." Freedom from detention "is the most elemental" of private interests affected by official action. *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004); *see Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects."). So, it is unsurprising that "the Supreme Court has repeatedly recognized that individuals who have been released from custody, even where such release is conditional, have a liberty interest in their continued liberty." *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (collecting cases) (citation modified).

As such, because Petitioner was allowed to remain at liberty pursuant to the conditions of his OSUP following an IJ's grant of deferral of his removal order, he "took with [him] a liberty interest which is entitled to the full protections of the Due Process Clause." *See Rodriguez-Flores v. Semaia*, No. CV 25-6900-JGB-JCx, 2025 WL 2684181, at *4 (C.D. Cal. Aug. 14, 2025). As such, the first *Matthews* factor favors Petitioner.

### 2. Risk of Erroneous Deprivation

The second *Mathews* factor examines "the risk of an erroneous deprivation of [Petitioner's private] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." 424 U.S. at 335. The risk of an erroneous deprivation of Petitioner's liberty interest is high here.

"[I]t is clear that there is a significant risk that the government will erroneously deprive [Petitioner] of that liberty interest if it does not provide [him] with a pre-detention hearing," as such a hearing provides a crucial "opportunity to determine whether there is any valid basis for [his] detention." *Pinchi*, 792 F. Supp. 3d at 1035. "The government's unilateral determination that re-detention is warranted is far less likely to be correct than the decision reached by a neutral

adjudicator in a bond hearing." *Duong v. Kaiser*, 800 F. Supp. 3d 1030, 1040–41 (N.D. Cal. 2025).

Particularly here, as evidenced by Petitioner's initial release on OSUP and years of compliance with ICE check-ins, Respondents made some determination that Petitioner was suited to be released into the community. [*See generally* TRO App.]. Petitioner proceeded to comply with all the conditions of his release and voluntarily appeared for a scheduled ICE appointment. [*Id.* at 6–8] In complying with Respondents' conditions of Petitioner's release, Petitioner was then arrested without a meaningful opportunity to be heard or other procedural safeguard posing a high risk of error, with substantial harm. [*Id.*]; *see, e.g.*, *Pinchi*, 792 F. Supp. 3d at 1035 (where petitioner "was detained after more than two years of attending every required immigration hearing and despite her deep community ties and lack of any criminal record," there was "a significant risk that even the two-day curtailment of liberty that [Petitioner] already suffered upon her re-detention by ICE was not justified by any valid interest"); *Rivera Larios v. Albarran*, No. 25-CV-08799-AMO, 2025 WL 3043391, at *8 (N.D. Cal. Oct. 31, 2025) ("The risk of erroneous deprivation of a noncitizen's liberty interest is particularly high where, after being previously found to not be a flight risk or danger to the community, the government seeks to re-detain them without a hearing or other procedural safeguard.").

Even though Petitioner may have had an informal interview detailing the reasons for his detention, "such a post-deprivation hearing cannot serve as an adequate procedural safeguard because it is after the fact and cannot prevent an erroneous deprivation of liberty." *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025); *see also Domingo v. Kaiser*, No. 25-CV-05893 -RFL, 2025 WL 1940179, at *3 (N.D. Cal. July 14, 2025) ("Even if Petitioner-Plaintiff received a prompt post-detention bond hearing under 8 U.S.C. § 1226(a) and was released at that point, he will have already suffered the harm that is the subject of his motion: that is, his potentially erroneous detention.").

### 3. Government's Interest

The third *Mathews* factor contemplates "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335.

Respondents suggest that "the public interest in enforcement of the United Stats's immigration laws is significant." [Opp. at 10]. But such interest does not outweigh the due process protections imbued in the Constitution.

As many other courts have recognized, there is no meaningful countervailing government interest that supports detaining previously released noncitizens like Petitioner without a pre-detention hearing. *Fernández López v. Wofford*, No. 25-CV-01226-KES-SKO, 2025 WL 2959319, at *6 (E.D. Cal. Oct. 17, 2025) ("In immigration court, custody hearings are routine and impose a minimal cost. If the government wishes to re-arrest petitioner at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low." (citation modified)); *Pinchi*, 792 F. Supp. 3d at 1036 ("[D]ue process requires the government to identify some interest beyond its own administrative practices to justify depriving an individual of her liberty without any pre-deprivation protections. Detention for its own sake, to meet an administrative quota, or because the government has not yet established constitutionally required pre-detention procedures is not a legitimate government interest."); *Diaz v. Kaiser*, No. 3:25-CV-05071, 2025 WL 1676854, at *7–8 (N.D. Cal. June 14, 2025) ("[T]he government's interest in re-detaining Petitioner-Plaintiff without a hearing is low, particularly in light of the fact that Petitioner-Plaintiff has long complied with his reporting requirements." (citation modified)).

**B.    Likelihood of Irreparable Harm**

Petitioner currently suffers irreparable harm because Petitioner has likely been detained in violation of his constitutional rights. "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017) (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)). This factor thus favors Petitioner.

**C.    Balance of Hardships and Public Interest**

The balance of the hardships tips strongly in Petitioner's favor because he will suffer great hardship if this Court were to deny his TRO Application. *See Alliance for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134–35 (9th Cir. 2011) (requiring the balance of hardships to "tip sharply" in the moving party's favor). Where the government is the opposing party, balance of equities and public interest merge. *See Nken v. Holder*, 556 U.S. 418, 435 (2009). Thus, the Court evaluates whether any significant "public consequences" would result from issuing the preliminary injunction. *Winter*, 555 U.S. at 24.

As other courts have recognized, "the public has a strong interest in upholding procedural protections against unlawful detention." *Vargas v. Jennings*, No. 20-CV-5785-PJH, 2020 WL 5074312, at *4 (N.D. Cal. Aug. 23, 2020). The government "cannot reasonably assert that it is harmed in any legally cognizable

sense by being enjoined from constitutional violations." *Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983).  Here, in the absence of an injunction, Petitioner is and will continue to experience detention that resulted from a deprivation of his due process rights.  Therefore, the Court, like many courts across the country, finds that the only reasonable relief is Petitioner's release.  *See Grigorian*, 2025 WL 2604573, at *10 (collecting cases).

## IV.   CONCLUSION

For the reasons described above, the Court **GRANTS** Petitioner's TRO Application.  [Dkt. No. 2].  The Court **ORDERS** Respondents to release Petitioner from immigration detention forthwith.  Respondents are **ORDERED** to return to Petitioner his work authorization documents and other seized identity documents at the time of his release.  Respondents are further **ENJOINED AND RESTRAINED** from again detaining Petitioner without notice and a pre-detention hearing where the government bears the burden of proving, by clear and convincing evidence, that the circumstances have changed as to his danger to the community or a flight risk, and that no conditions other than his detention would be sufficient to prevent those harms.  *Pinchi*, 2025 WL 2084921, at *7.

Respondents are **ORDERED** to file a status report certifying compliance with the above order of release within three (3) days from the date of this Order.  The Court directs the parties to present all subsequent matters in this case to the Magistrate Judge.

**IT IS SO ORDERED**.